## Commonwealth v. Beezer.

*Liquor law—Possession of liquor—Brewing company—President—Act of March 27, 1923.*

1. The president of a brewing company, indicted for the unlawful manufacture and possession of beer having an unlawful excess of alcoholic content, in violation of the Act of March 27, 1923, P. L. 34, cannot be convicted unless he had knowledge of the offence charged in the indictment, either directly proven or implied from the relationship or other circumstances.

2. In such a case, where a permit to manufacture beer had expired and not been renewed, it is reversible error for the trial judge to charge that if there was any possession by the company after the expiration of the permit, the defendant should be convicted, instead of leaving to the jury the question whether defendant had knowledge of any illegal possession by his company.

Rule on Commonwealth to show cause why new trial should not be granted. Q. S. Centre Co., Dec. Sess., 1925, No. 60.

*S. D. Gettig* and *E. J. Thompson* (with them *George W. Zeigler* and *John J. Bower*), for rule.

*Ivan Walker*, District Attorney at the time of the trial, and *John G. Love*, District Attorney at the time of the argument, for Commonwealth, contra.

KELLER, P. J., Aug. 13, 1926.—On Dec. 17, 1925, the defendant, who was president and general manager of the Philipsburg Brewing Company, Incorporated, after having been duly indicted, was tried and convicted upon the

charge of unlawfully possessing intoxicating liquor, for beverage purposes, contrary to the provisions of the Act of March 27, 1923, P. L. 34.

His counsel have filed twenty-one reasons for a new trial, two of which relate to the refusal of the judge before whom the case was tried to give binding instructions and direct a verdict for the defendant, two of which allege the verdict was against the law and the evidence, ten of which refer to the admission or non-admission of testimony during the trial of the case, and seven of which relate to the court's instructions to the jury, and to the answers to points or requests of defendant's counsel for certain instructions to the jury given by the trial judge.

From the testimony and evidence produced at the time of the trial, it appears that during the year 1923 the Philipsburg Brewing Company, Inc., of Philipsburg, Pa., of which this defendant was president and general manager, upon application previously presented and approved, received a Federal permit, dated April 25, 1923, authorizing and permitting it, subject to the further restrictions of the Pennsylvania State law, to operate a dealcoholizing plant for the production of cereal beverages, and to use intoxicating liquor in the operation of the same for non-beverage purposes, the final product to contain less than one-half of 1 per cent. of alcohol by volume, which permit, by its terms, remained in force until Dec. 31, 1923, unless revoked, suspended or renewed, as provided by law or regulations afterwards. Upon the company's application presented and approved, a similar Federal permit was issued to it, which, by its terms, remained in force until Dec. 31, 1924, unless revoked, suspended or renewed, as provided by law or regulations. It appears that this last-mentioned *permit authorizing* the *production* or *manufacture* of cereal beverages was revoked Dec. 10, 1924, and that the last brew of beer made thereunder was on Oct. 21, 1924, at which time the company had on hand approximately 677 barrels contained in five vats.

On March 13, 1925, said Philipsburg Brewing Company, Inc., made an application to the Federal Prohibition Commission "for a *permit* to *dealcoholize* (its) entire stock of beer now in vats to one-half of 1 per cent. alcoholic volume, and sell the same for the purpose of closing the plant in obedience to the withdrawal of the present permit, to the end that we retain no product of any kind in the plant until such time as a new permit may be granted by the department to the plant." Pursuant to said application, a Federal permit was issued about May 19, 1925, authorizing said company, "subject to the further restrictions of the law of Pennsylvania, to dealcoholize 677 barrels of beer now on hand, the alcoholic content of which is higher than one-half of 1 per centum by volume." Said permit was issued for a period of *sixty days only,* to expire *July 18, 1925,* and extended to the sale as well as the dealcoholization of the material on hand, and provided, *inter alia,* that said dealcoholization was "*to be at all times under the immediate supervision of two Government agents to be stationed on the premises during such operations.*" By a subsequent notation, dated July 17, 1925, under authority received from Washington, the date of expiration of said permit was extended for a further period of sixty days to Sept. 17, 1925.

On Tuesday, July 7, 1925, Roy Wilson and Mr. Grisson, two Federal prohibition agents, came to the plant of the Philipsburg Brewing Company for the purpose of watching the dealcoholizing of the beer, so that its alcoholic content would be brought down to less than one-half of 1 per cent., and thus be available for commercial purposes. They stayed there until the following Saturday, when they were withdrawn by their superior officers (stating, however, that they would be back), during which time no beer was dealcohol-

ized, as the contents of one vat (No. 2) were found to be all right, but they supervised the racking it off in bottles from this vat, as required by the company's Government permit. The beer having an alcoholic content greater than the one-half of 1 per cent. was contained in four other vats, designated as Nos. 6, 8, 9 and 10. During this time the defendant spoke to at least one of them, Roy Wilson, in reference to dumping or destroying the beer then on hand in the plant having an alcoholic content of more than one-half of 1 per cent. in volume, and referred to in the testimony as high-powered beer, but was informed by Wilson that said beer on hand would have to be left intact as it then existed, unless there was an order from the court or the Commissioner of Internal Revenue to dump or destroy the same. At the trial, the Commonwealth questioned Wilson's authority to give the defendant these instructions, but both the defendant and Wilson testified that they were in fact given, Wilson saying: "The instructions that I gave were that they could not dump it without an order from the court. That they should hold the beer until he knew what disposition was going to be made in reference to their permit." At that time the brewing company's permit to dealcoholize their beer expired July 18, 1925, but later the same was extended to Sept. 17, 1925. It further appeared that in August, 1925, the brewing company made application for a further extension of their permit to dealcoholize, but no action relative thereto was taken by the Government, or, at any rate, said permit was not further extended, nor did the Government send any other Federal prohibition agents to the plant of the Philipsburg Brewing Company for the purpose of watching or supervising the dealcoholization of their beer, in order that it might be used for commercial purposes, after Wilson and Grisson left about July 11, 1925.

Such was the condition of affairs when, on Oct. 12, 1925, a detail of the Pennsylvania State Police, consisting of a sergeant, a corporal and two privates, after having secured a search warrant from a justice of the peace at Philipsburg, Pa., went to the plant of the Philipsburg Brewing Company and conducted a search. There had been a meeting of the directors of the company that morning, and, after adjournment, this defendant and three others had gone over to the plant for the purpose, as was testified, of talking over the general affairs of the company, and also relative to the sale of their stock by some of them, and were all there when this detail of Pennsylvania State Police entered the plant, shortly after 1 o'clock P. M., and placed everybody on the premises under arrest. The State Police found approximately 700 barrels of beer, contained in five vats, Nos. 2, 6, 8, 9 and 10. Upon being tested, first by an alcoometer and later by a chemical analysis, it appeared that vat No. 2 contained beer having an alcoholic content of less than one-half of 1 per cent., or what is termed cereal beverage or near-beer, and that vats Nos. 6, 8, 9 and 10 contained beer having an alcoholic content ranging from 3 to 5 per cent., or what is termed high-powered beer. All the beer was in vats which were locked, and in order to get the beer out of the vats, it was necessary to unlock the same with a key, which was obtained from the chief engineer of the company. They found no beer of any description in bottles, either cereal beverage or high-powered beer, nor did they find any materials for the making of beer on the premises. One of the Commonwealth's witnesses swore that when they first entered the brewery plant, they saw one of the officers of the company, not this defendant, with a mug of beer, from which he had been drinking, but he could not say whether it was beer or near-beer, nor was there any testimony offered that any beer had been delivered to anybody from that brewery for beverage purposes.

Section 3 of the Act of March 27, 1923, P. L. 34, provides: "It shall be unlawful for any person to manufacture, sell, offer for sale, barter, furnish, transport, *possess*, or deliver within, or import into or export out of, the Commonwealth any intoxicating liquor for beverage purposes, except as hereinafter set forth: Provided, however, that nothing in this act shall prohibit the alcoholic contents of malt or brewed liquors from exceeding one-half of 1 per cent. during the process of manufacture only thereof." And it has been held that under the terms of this act it is not unlawful for such liquor to contain more than one-half of 1 per cent. of alcohol during the process of manufacture only; but if it is drawn off from the manufacturing vats into barrels or other receptacles intended for storage, sale or delivery while still containing any of such excess alcohol, it constitutes an unlawful manufacture and possession: Com. *v.* Liberty Products Co., 84 Pa. Superior Ct. 473.

And in the trial of a corporation for the possession of intoxicating liquors in violation of the Act of March 27, 1923, P. L. 34, it is no defence to plead that an employee of the defendant corporation had made a mistake in drawing off the liquor before the prohibited amount of alcohol had been eliminated, even though such mistake or omission were an innocent one, and the employer corporation would be responsible for the illegal act resulting therefrom: Com. *v.* Liberty Products Co., 84 Pa. Superior Ct. 473.

However, this rule has been modified in the case of the trial of an officer of the corporation indicted for the manufacture and possession of intoxicating liquors, who, it has been held, cannot be convicted for a violation of law by the corporation unless he had knowledge of the offence charged in the indictment, either directly proven or implied from the relationship or other circumstances: Com. *v.* Weiler, 84 Pa. Superior Ct. 481.

The question as to whether this defendant was in unlawful possession of intoxicating liquors, for beverage purposes, contrary to the provisions of the Act of March 27, 1923, P. L. 34, was one of fact for the determination of the jury, under proper instructions relative to the law governing the case by the court; and we do not think that the trial judge erred in his refusal to give binding instructions in favor of the defendant. But we do think that the trial judge was in error when he charged the jury as follows: "If the permit had actually expired upon the date fixed by the Commonwealth, Sept. 17, 1925, and you so find, then we say to you, gentlemen of the jury, that the possession of this high-powered beer was in fact an illegal possession under the laws of the Commonwealth of Pennsylvania, and under your oaths it will then become your duty to find this defendant guilty in manner and form as he stands indicted." There was no denial by the defendant that the brewing company's permit to dealcoholize had actually expired Sept. 17, 1925, so that, in charging the jury as above, the trial judge virtually directed the jury to find the defendant guilty, instead of leaving the real question as to his illegal possession of intoxicating liquor, for beverage purposes, to its determination.

In another portion of the charge the trial judge, referring to the testimony of Roy Wilson, the Federal prohibition agent, and to his statement to this defendant that he, the defendant, had no right to in anywise dispose of this beer, containing more than one-half of 1 per cent., contained in the four vats, which statement was uncontradicted, said: "If you find that Officer Wilson had such authority (to make the above statement) and that he issued such an order to the defendant, then we say to you, gentlemen of the jury, that such an order could only be effective up to the 17th day of September, 1925, when the Federal permit issued to this Philipsburg Brewing Company auto-

matically expired." In so charging, we think the trial judge also committed error, and for the same reason as stated above.

Counsel for the defendant having requested the court to charge that the defendant could not be convicted unless the jury also found that he had knowledge that the retention of the beer in vats in the course of manufacture was a violation of the law, the trial judge answered said request as follows: "This point is refused, and we further say to you that, inasmuch as Edward C. Beezer was an officer of the Philipsburg Brewing Company, if you find under all the facts in this case that this permit had expired, as we have stated to you in our general charge, then you may find him guilty in manner and form as he stands indicted." In our opinion, the answer to this point is open to the same objection as the portions of his general charge above quoted.

The theory of the Commonwealth seemed to be that as the brewing company's Federal permit to dealcoholize had expired Sept. 17, 1925, and had not been renewed or extended when the Pennsylvania State Police made their raid, Oct. 12, 1925, *ipso facto*, this defendant was guilty of violation of the Act of March 27, 1923, P. L. 34, prohibiting, *inter alia*, the illegal possession of intoxicating liquor for beverage purposes, and the trial judge apparently formulated his charge to the jury upon the same theory. In our opinion, this was error, and without taking up the defendant's various reasons for a new trial and considering them *seriatim*, we feel that, in justice to the defendant, his motion should prevail and a new trial be granted.

And now, Aug. 13, 1926, defendant's rule for a new trial is made absolute.